UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROSEMARY LAND HYMAN                                                    PLAINTIFF

v.                                                   CIVIL ACTION NO. 3:13-cv-1027-HTW-LRA

CAROLYN W. COLVIN
Acting Commissioner of Social Security                                 DEFENDANT

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to Plaintiff's Motion for Reversal and/or Remand [12] and Defendant's Motion for an Order Affirming the Decision of the Commissioner [15]. Having considered the record in this matter, the undersigned recommends that Plaintiff's motion be denied and Defendant's motion be granted.

**HISTORY**

Plaintiff's application for social security disability and disability insurance benefits was denied initially and upon reconsideration, as well as denied by an Administrative Law Judge (ALJ) on March 27, 2012, and the Appeals Council on May 3, 2013. [11] at 5, 32. Plaintiff was 48 years old at the time of the hearing before the ALJ, making her a "younger" person for social security purposes. Plaintiff has a high school education, and before claiming to be disabled, worked as a loan officer and collection clerk. [11] at 30.

Following the applicable five-step analysis,[1] the ALJ found that Plaintiff had not engaged

---

[1] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."

1

in substantial gainful activity since the alleged disability onset date of February 8, 2008 (step 1), and had severe impairments of severe migraines, high blood pressure, chronic back pain, GERD, history of TIA, vision problems and obesity (step 2). The ALJ concluded that Plaintiff's impairments were not as severe as any impairment listed as presumptively disabling in the applicable regulations (step 3). The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, "except involving work that does not require 20/20 visual acuity, and because of periodic headaches is limited to simple, routine, repetitive tasks, and dealing with objects rather than data or people." [11] at 26. The ALJ determined that Plaintiff was unable to return to her past relevant work (step 4). *Id.* at 30. At step 5, utilizing the testimony of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing other work and therefore not disabled. [11] at 31-32.

## STANDARD OF REVIEW

When considering social security appeals, this Court's review is limited to determining whether substantial evidence supports the findings made by the Social Security Administration and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Adler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402

---

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the plaintiff is determined to be disabled or not disabled, the inquiry ends. The plaintiff bears the burden through the first four steps of the analysis. At the fifth, the defendant must show that there is other substantial work in the national economy that the claimant can perform. *See, e.g., Myers v. Apfel*, 238 F.3d 617, 619-620 (5th Cir. 2001).

U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)*; Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld.

## THE ISSUES PRESENTED

**1.     Treating Physician's Opinion**

Plaintiff first contends that the ALJ committed reversible error in not affording controlling weight to the opinion of her treating physician, Dr. McCloud, and by not providing good cause for rejecting that opinion. [13] at 9. Plaintiff also argues that Dr. McCloud's is the only function-by-function medical assessment in the record and therefore must be accepted as to Plaintiff's RFC.

Plaintiff was seen once by Dr. McCloud, a family practitioner, in March of 2010. [11] at 44. In November 2010, Dr. McCloud provided a medical source statement opining that

3

Plaintiff's pain would be distracting to performance of adequate work activity. [11] at 285-286.

Dr. McCloud further opined that the side effects of Plaintiff's medications would limit her effectiveness. *Id.* The ALJ addressed Dr. McCloud's treatment and statement:

> North Hills Family Medicine Clinic records show that she was seen by Miyako McCloud, M.D. on March 24, 2010 for a complaint of low back pain and requesting medication refills. She reported at that time that the duration of her back pain was 4 or 5 days. Her pain level was reported as moderate and to interfere with sleep, work, and household chores. On examination she was found to have mild to moderate tenderness of the lumbar spine, and her blood pressure was 140/90. Lumbar spine x-rays performed on that date showed the spinal curvature to be normal, intervertebral and articular spaces of normal diameter, articular surfaces were smooth and showed no evidence of eburnation, there was no evidence of spurring articularly or posteriorly into the neural foramina, neural foramina were of normal diameter and showed no evidence of encroachment or foreign body, bone texture was essentially normal, and the paravertebral soft tissues shadows were normal.
>
> . . . .
>
> On November 9, 2010, Dr. McCloud reported that she had pain to such an extent as to be distracting to adequate performance of daily activities or work, and that greatly increased to such degree as to cause distraction from tasks or total abandonment of task with physical activity such as walking, standing, sitting, bending, stooping, moving of extremities, etc. It was also indicated that drug side effects could be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc. Dr. McCloud reported limitations of lifting/carrying 10 pounds occasionally and 5 pounds frequently; sitting 2 hours; no standing or walking; not required to use an assistive device; no pushing and pulling movement (arm and/or leg controls); no working with or around hazardous machinery; rarely climbing, gross manipulation, bending and/or stooping movements, reaching, or operating motor vehicles; occasional fine manipulation; and frequent environmental problems (allergies, dust, etc.). These limitations were reported to be due to arthritis pain in the back and medication side effects and lumbosacral back pain.

[11] at 29-30 (citations omitted). Between the time of Plaintiff's one visit to Dr. McCloud in March 2010, and her November 10, 2010, report, Plaintiff had not seen Dr. McCloud. The ALJ

noted the following medical visits between Plaintiff's visit to Dr. McCloud and Dr. McCloud's medical source statement. Plaintiff was seen at the Wesley House Community Center once in April 2010, for complaints of migraines, back pain, GERD and depression. That visit was for a check-up and medication refills, and her blood pressure was 124/82 that day. Plaintiff had an eye examination in May 2010, with a good prognosis-no limitations or restrictions except glasses. On October 12, 2010, Plaintiff was again seen at Wesley House Community Center, complaining of back pain and for medication refills. Her blood pressure at that visit was 100/70. Plaintiff was encouraged to exercise and do back strengthening. There are no other medical visit records from March 2010 until November 2010.

In *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit set out the factors an ALJ must address when determining that a treating physician's opinion is not entitled to controlling weight. Citing 20 C.F.R. § 404.1527(d), the *Newton* Court stated that when rejecting or giving little weight to the treating physician's opinion, the ALJ must consider:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456.

The Social Security Ruling (SSR) that addresses when to give controlling weight to a treating physician's opinion reads, in pertinent part:

    1.      A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

    2.      Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

    3.      Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

    4.      Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

    5.      The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

    6.      If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted.

    7.      A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

SSR 96-2p.[2]

The Fifth Circuit has held that treating physicians' opinions are not conclusive. *See, e.g.*, *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994)("The treating physician's opinions, however, are far from conclusive."). It remains the ALJ's job throughout the process to determine whether a claimant is disabled for social security purposes. The ALJ described the

---

[2]This ruling may be found at: http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-02-di-01.html.

weight given to Dr. McCloud's opinion as follows:

> As for the opinion evidence, the limitations reported by Dr. McCloud in Exhibit 14F have been given weight only in so far as they are consistent with the determined residual functional capacity which is supported by the overall evidence of record. Dr. McCloud reported lifting/carrying restrictions which are consistent with a sedentary level of exertion. However, it was also reported that claimant could only sit for 2 hours and could not stand or walk, which is totally inconsistent with the objective findings which show normal lumbar spine x-rays and the only positive clinical findings of lumbar tenderness. Additionally, the remaining reported nonexertional limitations are also not supported by the objective medical evidence. Finally, with regard to Dr. McCloud's report regarding pain and medications side effects, there is no evidence of record to support the level of pain reported and no evidence to substantiate the medication side effects. With regard to the state agency opinions, the undersigned has given great weight to the psychological opinions, but based on additional evidence received at the hearing level, which shows that the claimant is more limited than determined by the state agency physicians, the physical opinions could not be given great weight.

[11] at 30. The ALJ did not fully accept Dr. McCloud's opinion as to Plaintiff's physical limitations because it was not well-supported and was inconsistent with objective findings. Nor were the state agency opinions fully accepted. Instead, the ALJ made a decision supported by the evidence of record. The undersigned concludes that the ALJ applied the correct legal standard and his opinion is supported by substantial evidence on this point.

Citing cases from other jurisdictions and *Johnson v. Barnhart*, 285 F. Supp. 2d 899, 912 (S.D. Tex. 2003), Plaintiff also argues that Dr. McCloud provided the only medical RFC determination and that the ALJ may not make a determination of Plaintiff's functional loss without an expert opinion. In *Johnson*, however, the court held that there was not substantial evidence supporting the ALJ's RFC determination, not that the ALJ should not have been the

decision-maker on the issue.  Pursuant to 20 C.F.R. § 404.1546(c), it is the ALJ's job to determine RFC.  The ALJ in this case explained his RFC determination:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence which shows that she is obese and that she does have severe migraines, high blood pressure, chronic back pain, GERD, history of TIA, vision problems, but the records also show that her migraines have improved with treatment and that she is generally only seen for medication refills; that her blood pressure is pretty well controlled and has caused no end organ damage; that she has only been seen on a few occasions for back pain and with no more than mild clinical findings and normal x-rays; that her gastroesophageal reflux disease is for the most part controlled with medication; that while she reported left sided weakness as a result of the past TIA, she has normal clinical findings regarding the left upper and lower extremities; and that she does have decreased visual acuity at 20/20 in the right eye and 20/25 in the left eye which is within the normal range, and that while she is being monitored for glaucoma her pressures have been normal.

[11] at 30.  The undersigned concludes that substantial record evidence supports the ALJ's RFC determination.  The ALJ considered medical records regarding Plaintiff's limitations, explained the ones he discounted, and considered Plaintiff's testimony. [11] at 27-30.  Plaintiff's lumbar x-rays and clinical findings regarding her extremities were essentially normal and there is no medical record of any problem with medication side effects, aside from Dr. McCloud's November 2010 statement.  As the ALJ noted, the limitations in Dr. McCloud's statement concerning level of pain, standing and walking, and medication side effects are not supported by the record.  Moreover, other record evidence indicates Plaintiff had the ability to perform other work.  For example, in April 2010, Plaintiff's sister, who saw her daily, indicated that Plaintiff could perform daily routines for herself, her child and her dog. [11] at 115-118.  Plaintiff was able to sweep, wash dishes, iron and dust.  Plaintiff was able to cook as well.  *Id.* at 117.  An RFC assessment dated June 12, 2008, which was based on an examination conducted by a

doctor who examined Plaintiff for disability determination purposes, does not indicate any particular physical restrictions.[3] [11] at 214-221.

## 2. Plaintiff's Credibility

Plaintiff also argues that the ALJ failed to utilize the proper legal standard in analyzing her subjective complaints. SSR 96-7p provides in pertinent part:

1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or

---

[3] The RFC does reflect, as the ALJ noted, the opinion of the examining physician that Plaintiff's work ability was impacted by her obesity, poorly controlled hypertension and migraines. [11] at 220.

> examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Plaintiff argues that the ALJ's opinion was not specific enough to give an understanding for his rejection of Plaintiff's complaints. However, the ALJ pointed out that Plaintiff's complaints simply are not supported by medical evidence. The SSR quoted above clearly provides that complaints must be supported by medical findings. In his decision, the ALJ set out the proper standard, his conclusion that Plaintiff's subjective complaints were not fully credible, then all the medical evidence supporting his conclusion. [11] at 26-30. The ALJ noted that given the absence of medical support for the complaints, his decision as to Plaintiff's credibility was based on the record as a whole. *Id.* at 27. He then described both Plaintiff's testimony and the medical evidence. The undersigned's review of the record in this matter and the ALJ's decision indicate that the ALJ applied the appropriate legal standards and the opinion is supported by substantial evidence. Whether pain is disabling is a question for the ALJ, and his determination is entitled to deference. *See, e.g., Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

## CONCLUSION

Accordingly, for the reasons stated above, the undersigned recommends that Plaintiff's Motion [12] be denied and Defendant's Motion [15] for an Order Affirming the Decision of the Commissioner be granted.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636.

Respectfully submitted, this the 12th day of November, 2014.

/s/   Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE